agents of Drewry at all, they were so only as to the note. They were merely holders of paper owned by Drewry, and secured on real estate, the legal title to which was in Drewry, a title which could not be affected except by personal notice to Drewry. But even if Isaacs & Co. were agents of Drewry. both as to the note and as to Drewry's legal title in the seventh interest in Mount Blanc, they had no notice. They not only are not proved to have had notice, and did not have notice of the petition for sale, but it was impossible for them to have had it, living as they did in Richmond, a hundred and fifty miles from Danville, where the petition was filed. Even if they had had notice, the notice of one day would have been insufficient and an absolute mockery. The truth is, that no lien creditor had notice of the petition for this sale. It was filed on one day, and the decree granted on the next. Such a decree, without previous notice to lien creditors and without any time allowed them to have got wind of the proceedings, was absolutely null and void so far as it concerned them. Both sales made under this decree, as well the first sale at which F. G. Claiborne became the purchaser as the second sale under which W. W. Keen became the purchaser, and also the decree in confirmation of the resale, and the deed made in execution of it. were null and void as to the seventh interest of Drewry. I am not called upon to speak of its validity as to any other interest; but I will say that since I have come upon the bench in January, 1874, personal notice to lien creditors and a specific ascertainment of liens and their priorities, have been cardinal prerequisites to sales of real estate by assignees, and it is impossible for me to confirm any sale where they have been wanting. In this case they have been wholly wanting, grossly wanting.

The order of this court made upon the petition of Drewry on the 4th April. 1872, setting aside the sale as to Drewry's interest, must therefore stand. There could be no ground of claim for its validity, except the one now urged in Keen's petition, to wit, that Drewry allowed two years after the cause of action arose to elapse before bringing his petition to set aside the decree of December 2d, 1869. But Drewry's petition was filed on the 18th September, 1871, which was less than two years after the decree of December, 1869, and after the sale of his interest; though more than two years after the decree of sale of August 6th, 1868. There is no limitation of time, however, to a petition in a proceeding in bankruptcy. The 2d section of the bankrupt act [of 1867 (14 Stat. 518)] limits the time for bringing "suits at law or in equity" to two years, but contains no such limitation upon a proceeding in bankruptcy as such. This objection, therefore, does not hold good in the present case.

I have but one other question to consider,

and that is, as to the proper manner of trying the rights of all parties contestant. in respect to this seventh interest of Drewry in the Mount Blanc property. Not only is this a question between Drewry's and Walker's assignees, but it is alleged that there are holders of liens upon this seventh interest which accrued before Drewry derived this interest from W. C. Claiborne. These lienors had nothing to do with the bankrupt, or his assignees, or with the proceeding in bankruptcy. Their interests cannot be affected by a summary proceeding here of any sort. They have a right to a full hearing in a plenary proceeding. and must have it if they ask for it. I will set aside so much of the decree of the 4th April, 1872, as adjudges the absolute title and interest in that seventh to Drewry, leaving the deed from the assignees as it is, but this shall be without prejudice to the right of Drewry or the assignees to institute a proper proceeding for the authoritative adjudication of that title. The value at issue is large enough to give the right of appeal from the district or circuit court to the supreme court. If the right be tested here by petition in bankruptcy, there would be only an appeal to the supervisory jurisdiction of the circuit court. and no appeal would be allowable thence to the supreme court. An adjudication of the title in a proceeding in bankruptcy would cut off this right of appeal, and such adjudication must not be made.

In order to preserve this right to the party who may lose the case in the inferior court, the rights of parties must be adjudicated upon a plenary bill in chancery, brought either in the district or circuit court.

DREXEL (SPARHAWK v.). See Case No. 13,204.

## Case No. 4,082.

In re DREYER.

[2 N. B. R. 212 (Quarto 76).][1]

District Court, S. D. New York. Oct. 3, 1868.

BANKRUPTCY—DISCHARGE—FRAUD.

Vague and general specifications reciting fraud, &c., will not be received in opposition to discharge.

[Cited in Re Carrier, 47 Fed. 440.]

I, Thaddeus Smith, of North Hadley, Massachusetts, having proved my judgment and claim against the estate of said Frederick A. Dreyer, bankrupt, and having received notice of his petition for discharge from his debts, do hereby oppose the granting of said discharge; and for grounds of such opposition, file the following specifications: First. That the debts and each and every one of them which the judgment and claim proved before the register, Isaac Dayton, Esq., were created by the fraud of said Frederick A.

---

[1] [Reprinted by permission.]

Dreyer. Second. That said bankrupt has wilfully sworn falsely in his affidavit annexed to his schedule and inventory of his property. Third. That said bankrupt has concealed part of his estate and effects. Fourth. That said Frederick A. Dreyer has given fraudulent preference to his brother (or other relative), Dreyer and others, contrary to the provisions of the act under which the discharge is sought. Fifth. That said Frederick A. Dreyer, since the passage of said act, has destroyed, mutilated, and altered his books, documents, papers, writings, and other securities, and has made false and fraudulent entries in his books of account and other documents, with intent to defraud his creditors. Sixth. That the said Frederick A. Dreyer has made a fraudulent transfer or assignment of part of his property to one —— Dreyer, and others, for the purpose of preferring said persons, and for the purpose of preventing his property from being distributed under the said act in satisfaction of his debts. Seventh. That said Frederick A. Dreyer has wilfully and fraudulently omitted a number of his creditors from his schedules in his application for his discharge herein. Eighth. That the said Frederick A. Dreyer has, in contemplation of becoming bankrupt, made prepared pledges, absolutely or conditionally with said Thaddeus Smith, and other creditors herein, for the purpose of preventing his property from coming into the hands of the assignee, and of being distributed under this act, in satisfaction of his debts. Thaddeus Smith, per N. Millard. Attorney.

BLATCHFORD, District Judge. The specifications filed in opposition to a discharge are altogether too vague and general to be triable. A discharge is granted.

DREYFOUS (RICHMOND v.). See Case No. 11,799.

DREYFUS, Ex parte. See Case No. 8.043.

DRIGGS (KETCHUM v.). See Case No. 7,735.

## Case No. 4,083.

### DRIGGS v. MOORE.

[1 Abb. (U. S.) 440;[1] 3 N. B. R. 602 (Quarto, 149).]

Circuit Court, E. D. Michigan. March Term, 1870.

BANKRUPTCY — INVALIDITY OF PREFERENTIAL ASSIGNMENTS — WHAT IS INSOLVENCY.

1. When an insolvent debtor gives a mortgage in favor of one creditor, with intent to secure to him a preference over other creditors, and such creditor has, at the time, reasonable cause to believe the debtor insolvent, the mortgage is void, by the provisions of the bankrupt law of 1867 [14 Stat. 517].

2. If, from the circumstances under which the mortgage was given, it must necessarily have

operated as a preference, the creditor will not be heard to say, in support of the transaction, that the debtor did not intend to create one.

[Cited in Re Silverman, Case No. 12.855; Goodenow v. Milliken, Id. 5,535; Walbrun v. Babbitt, 16 Wall. (83 U. S.) 581; Curran v. Munger, Case No. 3,487; Alderdice v. State Bank of Virginia, Id. 154.]

3. The question of insolvency is a question of fact, and depends, in part, upon the usage and understanding which prevails in the locality with reference to which the question arises.

4. The rule that a trader who is not able to pay all his debts in the usual ordinary course of business as persons carrying on trade usually do, is to be regarded as insolvent,—approved, as a general rule.

5. Failure to pay a single debt when due, is not sufficient to establish insolvency.

This bill in equity was filed by Frederick E. Driggs, as assignee in bankruptcy of the estate of Tonkin & Trewartha, against the persons composing the firm of Moore, Foote & Co., to recover assets of his assignors, which defendants had sold in virtue of a claim to them under a mortgage executed by the assignors.

Driggs & Pond, for complainant.
Meddough & Lothrop, for defendants.

WITHEY, District Judge. Tonkin & Trewartha, of Eagle Harbor, in the upper peninsula of Michigan. being indebted to defendants, merchants of Detroit, for merchandise, and also on a claim transferred to them in favor of Allan Shelden & Co., amounting in the aggregate to about twelve thousand dollars, on May 9, 1868, to secure the payment thereof, executed to the defendants a chattel mortgage on all or nearly all their personal property, including two stocks of goods at Eagle Harbor. To induce the giving of the mortgage, defendants extended time for payment, so that the first payment of eight hundred dollars would become due July first after the date of the mortgage, and a like sum monthly thereafter until the whole sum of twelve thousand dollars, with interest. should be paid. On July 15. the first installment not having been paid, defendants took possession of the mortgaged property, and a few days after sold the same at public vendue. On August 3, Tonkin & Trewartha filed a petition to be declared bankrupts, and were afterwards duly adjudged to be such. Their assignee, the complainant, files a bill against defendants to recover the value of the property taken and sold under said mortgage, alleging that the mortgage was made within four months before the petition in bankruptcy; that Tonkin & Trewartha, at the date of the mortgage, were insolvent; that it was made with a view to give a preference, and that defendants had reasonable cause to believe their debtors insolvent, and the transaction to be in fraud of the provisions of the bankrupt act. The giving of the mortgage. and the then insolvency of Tonkin & Trewartha, are admitted by the

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]